# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| **JEROME C. THOMPSON,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | **Case No. 09-0973-CV-W-GAF-P** |
| **v.** | ) | **Crim. No. 07-00126-01-CR-W-GAF** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>ORDER DENYING MOVANT'S 28 U.S.C. § 2255 MOTION</u>

Jerome C. Thompson entered into a written plea agreement with the Government and pleaded guilty to one count of distribution of crack cocaine. Thompson did not appeal this Court's judgment, consistent with the appeal waiver contained in the plea agreement. Thompson has now filed a motion for post-conviction relief pursuant to 28 U.S.C. § 2255.

On April 4, 2007, an indictment was returned in the Western District of Missouri charging Thompson with two counts of distribution of 50 grams or more of cocaine base ("crack cocaine"), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). As a result of these charges, Thompson faced a statutory mandatory term of imprisonment of 10 years' to life imprisonment. 21 U.S.C. § 841(b)(1)(A).

On June 25, 2007, the Government filed an information, pursuant to 21 U.S.C. § 851(a)(1), establishing that Thompson had a prior felony drug conviction on January 26, 1993, for possession of a controlled substance in Jackson County, Missouri, Case No. CR91- 0048. This prior felony drug conviction increased the statutory minimum range of punishment from 10 years to 20 years of imprisonment.

On January 17, 2008, Thompson appeared before this Court and pleaded guilty pursuant to a written plea agreement with the Government. The plea agreement contained a factual basis, which established that on or about February 14, 2006, Thompson sold 62.4 grams of crack cocaine to a confidential informant. The plea agreement advised Thompson that conduct charged in any dismissed counts of the indictment as well as other uncharged conduct would be considered in determining his sentence. It further advised Thompson of the statutory range of punishment, 20 years' to life imprisonment, for the offense. The plea agreement also advised Thompson of the sentencing procedures to be utilized by this Court. Through the plea agreement, Thompson waived his rights regarding a trial, an appeal, and his post-conviction rights.

During the change of plea hearing, Thompson was placed under oath and questioned regarding his desire to plead guilty. Thompson stated that his mind was clear and he was not under the influence of drugs or alcohol. He stated that he was satisfied with the representation he had received, and that his defense counsel, Daniel Ross, had done everything asked of him. Thompson said that he had read and discussed the plea agreement with his defense counsel before signing and that he understood the agreement. He told the court that his guilty plea was of his own free will, and not the result of force or promises. Thompson acknowledged that the sentencing range was not less than 20 years' and not more than life imprisonment. He also acknowledged that by entering into the plea agreement, he was waiving his right to appeal or collaterally attack his conviction and sentence. Thompson further acknowledged that by pleading guilty, he was forfeiting the right to trial, to call witnesses, to confront witnesses, and to proof of guilt beyond a reasonable doubt.

At the conclusion of the change of plea hearing, this Court determined that Thompson was competent and capable and that the guilty plea was knowing and voluntary, and then accepted

Thompson's plea. Defense counsel, Mr. Ross, submitted a sworn affidavit stating that he reviewed the presentence investigation report (PSR) with Thompson. Mr. Ross then filed written objections to the PSR urged by Thompson.

On November 20, 2008, Thompson appeared before this Court for sentencing. Thompson made no objection or statement when defense counsel affirmed that he had reviewed the PSR with him. Defense counsel made an objection to the criminal history computation in the PSR, based on information that Thompson had provided. Thompson's objection to the two-point enhancement was denied. The Court again noted the statutory mandatory minimum of 20 years, which was not objected to by Thompson. Thompson was afforded an opportunity to speak, which he declined. This Court then sentenced Thompson to 240 months in prison, the statutory mandatory minimum for the offense.

Thompson did not appeal the judgment, abiding by the appeal waiver contained in his plea agreement. However, on November 16, 2009, Thompson filed a pro se motion pursuant to 28 U.S.C. § 2255 to set aside his plea of guilty and to vacate the sentence imposed upon him by this Court.

In his motion, Thompson alleges nine grounds for relief. Thompson heads each claim with the phrase "ineffective assistance of counsel," though several of the claims do not discuss his defense counsel's performance, but instead raises substantive claims. In his first six grounds, Thompson makes numerous general claims of dissatisfaction with his defense counsel. In the final three claims, Thompson raises substantive claims of error by the court or the Government, and not by his attorney, though he heads the claims as related to ineffective assistance of counsel. Thompson alleges that the drug quantity was erroneously calculated; that he did not possess the requisite prior

felony drug convictions to trigger the enhanced statutory punishment provisions of § 841(b)(1)(A); and that the Government failed to file requisite information, pursuant to 21 U.S.C. § 851(a)(1).[1]

Thompson waived the right to bring post-conviction proceedings, through his entry into the valid and binding waiver contained in the plea agreement. Thompson has failed to demonstrate any grounds that would justify setting aside the plea agreement and the waiver. Even if Thompson's post-conviction rights were not waived, the claims raised by Thompson are without merit.

The courts have recognized that criminal defendants may waive their post-conviction rights, just as they may waive their right to appeal, considering those rights synonymous. *United States v. Andis,* 333 F.3d 886, 887 n.3 (8th Cir. 2003) (en banc) (citing *DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000)) ("As a general rule, we see no reason to distinguish the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in the plea agreement context."). The Supreme Court has stated that "[t]o allow indiscriminate hearings in federal post-conviction proceedings, whether for federal prisoners under 28 U.S.C. § 2255 or state prisoners under 28 U.S.C. §§ 2241-2254, would eliminate the chief virtues of the plea system speed, economy, and finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977).

Although there are narrow exceptions to the enforceability of such waivers, such as when the district court imposes an "illegal sentence," i.e., a sentence in excess of the statutory maximum, or where the enforcement of such a waiver would result in "manifest injustice," *Andis, id.* at 891-92. Thompson does not argue that the waiver is unenforceable for these or any other reasons. Thompson

---

[1]On May 5, 2010, Thompson sent a letter to the court seeking to raise yet another claim of ineffective assistance of counsel. In his letter, Thompson alleges that trial counsel had a conflict of interest in that counsel represented "me and my CI's." This additional claim is not timely and even if it were, Thompson fails to show how counsel's performance was deficient or any prejudice suffered by this alleged conflict.

does not even mention the waiver in his motion. A review of the record demonstrates that the guilty plea was knowing and voluntary and did not result in an illegal sentence.

Claims alleging ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (quoting *Lawrence v. Armontrout*, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *Strickland,* 46 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Id. at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'"

*Lawrence*, 961 F.2d at 115 (quoting *Strickland*, 466 U.S. at 694).

Failure to satisfy both prongs is fatal to the claim. *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997) (no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness"); *see also DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).

To prove prejudice, the movant must also show that the outcome would have been different had the alleged defect been corrected. This showing must include an analysis of the probability that the relief would have been granted by the court. *See DeRoo*, 223 F.3d at 925 (if there is no reasonable probability that the motion would have been successful, movant cannot prove prejudice);

*Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (stating that resolution of the prejudice inquiry will depend largely on the likelihood of success if the alleged error were corrected).

The review of counsel's performance is deferential and the presumption is that counsel was competent and effective. *Smith v. Lockhart*, 921 F.2d 154, 156 (8th Cir. 1990). In evaluating counsel's conduct, the court should avoid "the distorting effects of hindsight," and concentrate on the circumstances as they appeared to counsel at the time of trial. *Strickland,* 466 U.S. at 689. The court should also avoid second-guessing counsel's strategic decisions. *Id; James v. State of Iowa*, 100 F.3d 586, 590 (8th Cir. 1996) ("[r]easonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful").

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. at 58-59. To prevail on this claim, Thompson must show that "there is a reasonable probability that, but for counsel's errors, Thompson would not have pleaded guilty and would have insisted on going to trial." *Id.; Thomas v. Lockhart*, 738 F.2d 304, 307 (8th Cir. 1984). Further, the "prejudice" inquiry will often require the court to assess whether the alleged error, if corrected, would have resulted in an acquittal at a subsequent trial. *Hill,* 474 U.S. at 59-60. It is well-established that a "plea of guilty is a solemn act not to be disregarded because of belated misgivings about the wisdom of the same," and that "those who seek to impeach their plea belatedly carry a heavy burden." *Tucker v. United States*, 470 F.2d 220, 221 (8th Cir. 1972).

Thompson alleges various general failings by his defense counsel. Thompson's predominate complaint is that he did not desire to enter into a plea agreement. He states that he desired to have the charges dismissed, or to be acquitted at a jury trial. Thompson also makes the following

allegations: (1) defense counsel only visited Thompson once during the pretrial phase, and failed to accept and return telephone calls from Thompson and his family; (2) defense counsel failed to meet with Thompson to review the evidence; (3) defense counsel failed to file a motion to suppress; (4) defense counsel failed to review the plea agreement with Thompson prior to the change of plea hearing; (5) defense counsel failed to review the PSR with Thompson prior to sentencing; (6) that defense counsel's fee practices violate ethical standards; and (7) that defense counsel should have requested a variance.

Thompson is proceeding *pro se,* and is, therefore, entitled to a liberal construction of his pleadings. However, this liberal construction will not substitute for the required degree of specificity in his claims. *See Saunders v. United States*, 236 F.3d 950, 953 (8th Cir. 2001). Even a *pro se* movant must identify facts that support his claims of error. *See, e.g., Blackledge v. Allison*, 431 U.S. 63, 75-76 (1977); *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985); *Burleson v. United States*, 340 F.2d 387, 390 (8th Cir. 1965); *see also* Rule 2(b)(2) of the Rules Governing Section 2255 Proceedings.

In addition, many of these claims contradict sworn statements made previously by Thompson before this Court. Statements made in court under oath should not be lightly set aside and "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74. In many cases where Thompson does cite specific claims, he fails to conduct the requisite analysis of the probability of relief. Thompson therefore fails to prove prejudice with regard to any of the claims.

Thompson's main complaint is that he would have preferred to have had the charges dismissed or to have been acquitted at trial. However, this Court questioned Thompson at length

regarding his rights to a jury trial, his desire to waive that right by pleading guilty, and his defense counsel's performance. Thompson had adequate opportunity to advise this Court of any reservations he had concerning the impending plea and his defense counsel's performance – he said nothing. Thompson again points to no evidence that overcomes the strong presumption of verity given to his prior sworn statements. *Blackledge,* 431 U.S. at 74. Thompson's change of mind or belated misgivings about the wisdom of his plea will not suffice to prove ineffective assistance of counsel. *Tucker*, 470 F.2d at 221.

Thompson seeks the end result of what he desired – i.e., an acquittal or dismissal of the charges – without any true evaluation of the probability of achieving such a result. To challenge his guilty plea, Thompson must show not only that he would have insisted on pleading not guilty, a fact which contradicts the record of his guilty plea, but also that he would have been acquitted at trial. *Hill,* 474 U.S. at 59-60. Thompson fails to provide any specific defense, facts or evidence that would have resulted in an acquittal. Thompson merely presumes success. This presumption is insufficient to overturn his guilty plea. *Tucker,* 470 F.2d at 221.

Thompson alleges that defense counsel was ineffective for failing to visit him at Osceola Correction Center. Thompson admits that defense counsel did visit him, but not frequently enough to suit Thompson. Contrary to Thompson's assertion, his defense counsel visited with him six times. In addition to the professional visits, his counsel visited with him either before or after his court appearances on at least four occasions at the United States Courthouse. Furthermore, defense counsel spoke with Thompson over the telephone.

In any event, Thompson fails to prove prejudice regarding the alleged lack of contact. Thompson has not shown how more frequent visits or telephone calls would have altered the outcome of the proceeding. Thus, the claim fails because he does not establish prejudice.

Thompson also alleges that defense counsel and the Government were required to meet and review all the evidence with Thompson. Thompson's case is straightforward compared to many other federal drug cases. The primary physical evidence against Thompson came from two purchases, conducted by a single cooperating informant, totaling 77.6 grams of crack. Thompson's case involved only one cooperating informant, a single case officer, and two amounts of drugs. The discovery in the case was limited to investigation reports regarding those sales and lab reports for the purchased crack. A search warrant was approved, however, no search was conducted. There was no other evidence.

The evidence against Thompson could have been summarized or discussed succinctly by defense counsel. Defense counsel was not required to review the evidence in any specific manner. The Government does not meet with defendants to review the evidence. Thompson's belief that a meeting between the Government, defense counsel, and Thompson himself was required stretches the bounds of *Strickland*. Thompson has failed to prove prejudice as a result of not having this meeting between the two parties.

Thompson also alleges defense counsel did not seek to suppress any of the evidence. However, Thompson fails to discuss whether any of the evidence could have been suppressed, or any grounds to base such a motion. As noted in the preceding section, all of the evidence against Thompson came from hand-to-hand buys from a confidential informant. A search warrant was issued, but never executed. Thompson merely requests the end result of the action, without

conducting any analysis regarding the probability that such relief would be granted by this Court. Quite simply, there was no evidence that could have been challenged in a motion to suppress and not grounds upon which to base such a challenge. Defense counsel cannot be found constitutionally ineffective for failing to file motions without merit. *See, e.g., Thomas v. United States*, 951 F.2d 902, 904-05 (8th Cir. 1991) (per curiam).

Thompson next claims that defense counsel failed to review the plea agreement with him before the change of plea hearing and failed to review the PSR with him before sentencing. These claims contradict the records of those proceedings, wherein Thompson stated under oath that defense counsel had reviewed the documents with him. Thompson's allegations are not sufficient to overturn the strong presumption of verity attributed to these sworn statements. *Blackledge*, 431 U.S. at 74. Further, the written objections to the PSR filed by defense counsel were those objections specifically urged by Thompson after Thompson's review of the PSR.

In his fifth claim, Thompson alleges that defense counsel violated the Missouri Supreme Court guidance on collection of fees. Thompson claims that the fee was unreasonably high and that it did not reflect the amount of work completed on the case. However, the setting or collection of attorney fees is not a claim of ineffective assistance of counsel. The Sixth Amendment does not require this Court to evaluate the fee amounts charged in each case and to determine if clients were overcharged.

Thompson also alleges that defense counsel failed to inform him of the enhanced statutory penalties as a result of his prior felony drug conviction. However, Thompson's claim that he was not advised of this range contradicts the record. Indeed, the record indicates that Thompson was

advised concerning the statutory range of punishment through the plea agreement and orally, by this Court, during the change of plea hearing.

In his sixth claim, Thompson argues that defense counsel was ineffective for failing to seek a variance and object to the disparity between powder cocaine and cocaine base. In support of this claim, Thompson relies upon: proposed legislation, seeking to alter the statutory range of punishment for crack cocaine offenses; a policy memorandum from the Department of Justice regarding the disparity as it relates to the Sentencing Guidelines; *United States v. Gully*, 619 F. Supp. 2d 633 (N.D. Iowa 2009); *Kimbrough v. United States*, 552 U.S. 85 (2007); and reports issued by the United States Sentencing Commission regarding the inequities of the current disparity.

Thompson's reliance upon the legal decisions in *Kimbrough* and *Gully* is misplaced. Both cases deal with a district court's ability to vary from the Sentencing Guidelines range, pursuant to 18 U.S.C. § 3553(a). *Kimbrough*, 552 U.S. at 111-12; *Gully*, 619 F.Supp.2d at 636-37. Thompson's advisory Sentencing Guidelines range was trumped by the statutory mandatory minimum sentence, pursuant to § 841(b)(1)(A). "[N]either [*United States v.*] *Booker*, [543 U.S. 220 (2005)], *Gall [v. United States*, 552 U.S. 38 (2007)], nor [18 U.S.C.] § 3553(a) affect a statutory minimum sentence." *United States v. Williams*, 474 F.3d 1130, 1131 (8th Cir. 2007); *United States v. Vieth*, 397 F.3d 615, 620 (8th Cir. 2005). The Williams court discussed this topic at length:

> Nothing in the reasoning of *Booker* expands the authority of a district court to sentence below a statutory minimum. The Court's remedial holding provided that to cure the constitutional infirmity of the mandatory guidelines system, a district court is authorized to consider the factors set forth in § 3553(a), and to vary from the sentence otherwise indicated by the sentencing guidelines. But *Booker* did not question the constitutionality of statutory minimum sentences. . . . Because statutory minimum sentences remain constitutional, and it is constitutional for Congress to limit a court's authority to sentence below such minimums, the remedial holding of *Booker* does not impact the pre-existing limitations embodied in § 3553(e).

*Williams*, 474 F.3d at 1132.

Indeed, the Eighth Circuit has reversed a district court who varied below the statutory mandatory minimum. *See United States v. Freemont*, 513 F.3d 884, 891 (8th Cir. 2008) (finding that district abused its limited authority for departing below the statutory minimum, based on § 3553(a) factors).

This Court was bound by the statutory range of punishment, pursuant to §841(b)(1)(A). This Court lacked authority to grant a variance based on proposed legislation or DOJ policy statements. The Supreme Court cases that require this Court to treat the Sentencing Guidelines as advisory do not allow this Court to deviate below the statutory range of punishment.

In addition to claims regarding ineffective assistance of counsel, Thompson alleges that this Court erred in the drug quantity calculation. Thompson believes that the sentence should have been based on a total drug quantity of 39.3 grams of crack cocaine. Thompson states that the plea agreement stipulated to the dismissal of Count Two, and that this dismissal had the effect of reducing the drug amount.

However, Thompson pleaded guilty to the offense of distribution of 50 grams or more of cocaine base. Thompson specifically agreed to the drug amount calculation in the factual basis of the plea agreement. Thompson further stipulated that dismissed and uncharged offense conduct would be utilized when calculating the appropriate sentence. Had defense counsel raised this objection during the sentencing hearing, the objection would have been denied. As a result, Thompson has failed to prove the prejudice.

In his final two claims, Thompson challenges the application of the prior felony drug conviction, used to increase the statutory range of punishment, pursuant to § 841(b)(1)(A). In his

eighth claim, Thompson claims that because he received a suspended imposition of sentence, that the conviction cannot be used to increase his statutory range of punishment under § 841(b)(1)(A). In his ninth claim, Thompson claims that the Government failed to file the proper information, required by § 851(a)(1). These claims are erroneous statements of the applicable Eighth Circuit case law and the record.

The determination of whether a crime qualifies as a felony drug offense is not based upon the actual penalty imposed, but rather the maximum penalty allowed for committing a particular crime. *See United States v. Guzman-Tlaseca*, 546 F.3d 571, 579 (8th Cir. 2008) ("in determining whether a state conviction is punishable for more than one year's imprisonment . . . we look to the maximum penalty allowed by [the state] statute") (quotations omitted). The crime of conviction was possession of a controlled substance, a Class C felony, which carries a maximum sentence of seven years' imprisonment. The PSR notes that this was a felony offense.

Thompson alleges that because he received a suspended imposition of the sentence and successfully completed probation, that the prior conviction was expunged, and therefore cannot a qualifying felony drug offense. Thompson includes the legal definition of "suspended imposition of sentence," from an online legal dictionary, in support of this argument. Contrary to Thompson's contention, a suspended sentence may be used to trigger the 20-year mandatory minimum under § 841(b). *See United States v. Davis*, 417 F.3d 909, 912-13 (8th Cir. 2005) (concluding a Missouri felony drug conviction for which the defendant received a suspended imposition of sentence and term of probation was a qualifying conviction for purposes of § 841(b)'s 20-year mandatory minimum sentence).

Next, Thompson contends that the Government failed to file the requisite information, pursuant to § 851(a)(1). Thompson seems to allege that the required information would have been filed after the PSR was issued. Thompson includes an incomplete copy of the docket sheet for a period after his guilty plea in support of the absence of the requisite information. An information pursuant to § 851(a)(1) must be filed prior to the defendant entering a plea of guilty or prior to the trial. See 21 U.S.C. § 851(a)(1) ("No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information...") (emphasis added). The Government filed the information on June 25, 2007, prior to Thompson's guilty plea. (D.E. 18.)

These claims are erroneous statements of the applicable law and the record. Under the Eighth Circuit case law, Thompson's prior conviction was a felony drug offense. The record is clear that the Government correctly and timely filed the requisite information to trigger the enhanced penalties pursuant to § 841(b)(1)(A).

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (2008) (internal quotation marks omitted). "No hearing is required, however, 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Id. (quoting Watson v. United States,* 493 F.3d 960, 963 (8th Cir. 2007)). *See also Sanders v. United States*, 347 F.3d 720, 721 (8th Cir. 2003) (a § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle him to relief, or (2) the allegations cannot be accepted as true because they are

contradicted by the record, inherently incredible, or conclusions rather than statements of fact). For the reasons discussed above, all of Thompson's allegations are inadequate on their face, factual assertions affirmatively refuted by the record, or matters of law that can be resolved on the basis of the record. Therefore, no evidentiary hearing is required.

Thompson can appeal the denial of his § 2255 motion to the court of appeals only on issuance of a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability should be issued only if there is a substantial showing of the denial of a constitutional right or raise an issue that is debatable among jurists of reason or deserving of further proceedings. See 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Each of Thompson's claims fails as a matter of law, and the merits of those claims are not debatable among reasonable jurists or deserving of further consideration. A certificate of appealability is denied.

WHEREFORE, for the reasons stated herein, Thompson's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is denied with having an evidentiary hearing.

s/ Gary A. Fenner
Gary A. Fenner, Judge
United States District Court

DATED:  May 18, 2010